Robert M. Hirsh
Mark B. Joachim
ARENT FOX LLP
1675 Broadway
New York, NY 10019
(212) 484-3900

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CRAIG ANTELL DO, PC dba NEW YORK PHYSICAL REHABILITATION AND WELLNESS,<br><br>Debtor. | Chapter 11<br><br>Case No. 14-10073 (SCC) |
| In re:<br><br>CAAM LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 14-10074 (SCC) |
| CRAIG ANTELL DO, PC dba NEW YORK PHYSICAL REHABILITATION AND WELLNESS, and CAAM LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CRAIG ANTELL, 274 MADISON COMPANY, LLC, ULM I HOLDING CORP., ANDREW MARCUS, STEVEN MASLOW, AND MAAC PAYROLL PROCESSING,<br><br>Defendants. | Adv. Proc. No. 14-01348 (SCC) |

**EMERGENCY MOTION FOR ORDER STAYING STATE COURT ACTIONS AGAINST DR. CRAIG ANTELL PURSUANT TO SECTION 105**

Craig Antell DO, PC dba New York Physical Rehabilitation and Wellness ("NYPRW") and CAAM LLC ("CAAM"; together with NYPRW, the "Debtors" or "Plaintiffs"), seek emergency entry of an order pursuant to section 105 of the Bankruptcy Code staying certain state court actions against Dr. Craig Antell (the "Motion"). In support of this Motion and filed contemporaneously herewith, the Debtors submit the Affidavit of Craig Antell in Support of the First Day Motions, sworn to on January 14, 2014 (the "Antell Affidavit"), and respectfully represent and set forth as follows:

**INTRODUCTION**

1. It is axiomatic that the Bankruptcy Code is designed to maximize value for the benefit of all creditors, not just certain ones.[1] The Bankruptcy Code does this by, among other things, limiting the rights of creditors. Since the filing of the bankruptcy cases, the Debtors have been appropriately proceeding towards a successful and timely reorganization, as detailed below and in the accompany affidavit of Dr. Craig Antell (the "Antell Affidavit")[2]. This Court should issue the requested preliminary injunction and enjoin the Defendants from continuing to prosecute the State Court Actions (defined below) so NYPRW and its sole owner and director may continue to focus on the Debtors' reorganization and sale efforts. This will preserve value for the benefit of all creditors and avoid the irreparable harm that is likely to befall the estates if the Defendants are permitted to attack the Debtors' reorganization on two fronts.

2. Accordingly, by this Motion, the Plaintiffs seek an order of the Court staying the

[1] "[T]he paramount policy and goal of Chapter 11, to which all other bankruptcy policies are subordinated, is the rehabilitation of the debtor." *Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 430 (Bankr. S.D. N.Y. 1990).

[2] A complete recitation of the facts and evidence in support of the Motion is set forth in the Antell Affidavit filed concurrently herewith.

State Court Actions against the NYPRW's sole owner, Dr. Antell, pursuant to 11 U.S.C. § 105(a) through the earlier of (1) the date the Debtors' plan is confirmed; (2) the date some other plan of reorganization is confirmed; (3) the date these cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code; or (4) further order of this Court.

## STATEMENT OF FACTS

### A. Cases and Debtors' Background

3. On the date hereof (the "Petition Date"), both Debtors filed voluntary petitions for relief in the Bankruptcy Court for the Southern District of New York under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' cases, and no creditors' committee has been appointed.

4. NYPRW is a New York professional corporation does business as New York Physical Rehabilitation & Wellness. Dr. Craig Antell is the sole owner and medical director of NYPRW and has served in this capacity since in or about July 1999.

5. The Debtors intend to file a sale procedures motion shortly selling substantially all of the Debtors' assets to a stalking horse buyer owned solely by Dr. Antell. During this short timeframe, the Debtors and Dr. Antell will be working diligently with the Debtors' legal counsel and financial advisor to stabilize and reorganize the Debtors' affairs while timely proceeding towards a sale to maximize value for the benefit of creditors.

6. Additional factual background relating to the Debtors' businesses and the commencement of these chapter 11 cases is set forth in detail in the Antell Affidavit, and is incorporated herein by reference.

**B.    Pre-Petition Disputes with the Defendants and the Pending State Court Actions Against the NYPRW's Sole Owner**

7.     Prior to the Petition Date, several state court actions (the "State Court Actions") were filed against the Debtors and Dr. Antell on various grounds. Dr. Antell vehemently denies the merits of those lawsuits as detailed in the Antell Affidavit. Among other things, it was recently discovered that the Debtors' officer manager Andrew Marcus had forged Dr. Antell's name and/or initials on various documents on behalf of the Debtor and himself, without his knowledge or consent, including CAAM's operating agreement and amendments thereto, certain license agreements by and between CAAM and NYPRW and certain guaranties of leases by and between CAAM and landlords 274 Madison Company and ULM I Holding Corp. A copy of the Affidavit of John F. Breslin, a forensic document examiner and his report laying out the various forgeries, is attached to the Antell Affidavit as Exhibit "B".

8.     A list of the State Court Actions presently pending against the Debtors and Dr. Antell in the Supreme Court of the State of New York as well as a brief description of the actions are provided here:

- *274 Madison Company, LLC v. CAAM, LLC, et al.*, index no. 652506-2013, filed on or about July 17, 2013. The Debtor leases space at 274 Madison Avenue, New York, New York from the owner 274 Madison Company, LLC. The owner has sued the Debtor and Dr. Antell, jointly and severally, for unpaid rents and damages in the amount of $69,000 based on a purported guaranty of the lease. A copy of the complaint is attached to the Antell Affidavit as Exhibit "C".

- *ULM I Holding Corp. v. Craig Antell, et al.*, index no. 653650-2013, filed on or about October 22, 2013. The Debtor leases space at 1776 Broadway, New York, New York from the owner ULM I Holding Corp. The owner has sued Dr. Antell for, *inter alia*, breach of a purported personal guaranty and damages in the amount of at least $742,726. A copy of the complaint is attached to the Antell Affidavit as Exhibit "D".

- *Andrew Marcus derivatively on behalf of CAAM, LLC and MAAC Payroll Processing, Inc. v. Craig Antell, et al.*, index no. 650942-2013, filed on or about March 15, 2013. Mr. Marcus, purportedly derivatively on behalf of CAAM, LLC and MAAC Payroll Processing, Inc. sued the Debtor and Dr. Antell, jointly and severally, for, *inter alia*, breach of license agreements, breach of fiduciary duties, and unjust enrichment and

request damages in excess of $40,000,000. A copy of the complaint is attached to the Antell Affidavit as Exhibit "E".

- *Andrew Marcus, CAAM, LLC and MAAC Payroll Processing, Inc. v. Craig Antell, et al.*, index no. 652561-2012, filed on or about July 25, 2012. Plaintiffs in that case have sued the Debtor and Dr. Antell, jointly and severally, for, *inter alia*, breach of license agreements, breach of fiduciary duties, and unjust enrichment and request damages in excess of $7,500,000. A copy of the complaint is attached to the Antell Affidavit as Exhibit "F".

- *Craig Antell v. Andrew Marcus*, index no. 652498-2012, filed on or about July 19, 2012. Mr. Marcus has filed counterclaims against the Debtor and Dr. Antell for, *inter alia*, breach of license agreements, breach of fiduciary duties, and unjust enrichment. A copy of the amended answer and counterclaims is attached to the Antell Affidavit as Exhibit "A".

9. The Debtors submit the instant Motion to enjoin the defendants in this adversary proceeding from continuing to prosecute the State Court Actions for a short time frame to allow the Debtors to focus on its reorganization efforts for the benefit of the creditor body.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtors' bankruptcy cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The basis for the relief requested is set forth in 11 U.S.C. § 105(a).

## DISCUSSION

### A. Standards for Issuance of a Preliminary Injunction

11. Under 11 U.S.C. § 105(a), a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105(a) gives bankruptcy courts the power to stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but "threaten the integrity of a bankrupt's estate." *See In re Johns-Manville Corp.*, 801 F.2d 60, 63-64 (2nd Cir. 1986). "Since injunctions in bankruptcy cases are authorized by statute, the usual equitable grounds for relief, such as irreparable damage, need not be

shown." *In re AP Indus., Inc.*, 117 B.R. 789, 802 (Bankr. S.D. N.Y. 1990) citing *In re Neuman*, 71 B.R. 567, 571 (S.D. N.Y. 1987); *In re Chateaugay Corp.*, 93 B.R. 26, 29 (S.D. N.Y. 1988).

12. Courts consider the following non-exhaustive list of factors in issuing a § 105 injunction to stay actions against a non-debtor: (i) whether the suit will (a) threaten the debtor's insurance coverage, (b) increase the debtor's indemnification liability, (c) result in inconsistent judgments, (d) expose the debtor to risks of collateral estoppel or res judicata, and/or (e) burden and distract the debtor's management by diverting its manpower from reorganization to defending litigation. *See In re The 1031 Tax Group, LLC*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008); *see also In re Granite Partners, L.P.*, 194 B.R. 318 (Bankr. S.D.N.Y. 1996).

13. Indeed, courts have extended the automatic stay to non-debtors where failure to extend the stay would jeopardize the success of the bankruptcy process. *See e.g., A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir. 1986) (if lawsuits were allowed to proceed, efforts to comply with discovery requests would sidetrack management from the reorganization process); *In re Ionosphere Clubs, Inc.*, 124 B.R. 635, 642 (S.D.N.Y. 1991) (stay may properly be extended to parties in interest to the reorganization where failure to do so would frustrate reorganization attempts); *In re Lomas Financial Corp.*, 117 B.R. 64, 67 (S.D.N.Y. 1990) (stay of litigation proper where reorganization efforts would be stymied by distraction of key personnel who were targets of litigation); *In re Johns–Manville Corp.*, 26 B.R. 420, 426 (Bankr. S.D.N.Y. 1983) (stay extended where targets of litigation were key operating personnel responsible for formulating plan of reorganization).

14. Here, the continued prosecution of the State Court Actions will detrimentally affect the Debtors' reorganization efforts and the bankruptcy estates, as discussed below. Accordingly, the Plaintiffs respectfully request the Court to stay the State Court Actions as

requested herein.

**B. <u>The Court's Authority under Section 105 of the Bankruptcy Code Should be Exercised and the State Court Actions Should be Stayed at Least Through Plan Confirmation or Dismissal/Conversion of These Cases</u>**

I. <u>Failure to Stay the State Court Actions Will Impair the Debtors' Reorganization Efforts</u>

15. In these cases, the affidavit of Dr. Craig Antell, filed concurrently herewith (the "Antell Affidavit"), has established that the estates will be detrimentally harmed if the State Court Actions are permitted to go forward against him. Dr. Antell is the sole owner of NYPRW and the Debtors' point person in these bankruptcy cases. Being forced to defend himself in the five (5) State Court Actions and participate in the attendant discovery, depositions, defense, and court hearings, will significantly distract him from focusing on the Debtors' reorganization efforts and the sale process and will divert his time, energy, and resources away from this bankruptcy cases. This will significantly impair his ability to run the Debtors' operations, maintain customer confidence, generate sales, stabilize cash flow, move forward with the sale process, and ultimately timely exit from the bankruptcy cases thereby harming the estates and the creditor body. Indeed, if the State Court Actions are not stayed, it will cause Dr. Antell to expend his limited resources, and will allow Dr. Antell to concentrate on the restructuring of the Debtors' and focus on his patients'well-being.

II. <u>Failure to Stay the State Court Actions Will Expose the Debtors to Risks of Collateral Estoppel and/or Inconsistent Judgments</u>

16. The continued litigation of the State Court Actions also risks prejudicing the Debtors' position with respect to claims against third parties including, without limitation, the Debtors' counterclaims against the various defendants herein and the validity of CAAM's operating agreement and amendments thereto. The mere risk of such a result justifies an injunction under § 105. *See In re Adelphia Commc'n Corp.*, 302 B.R. 439, 451 (Bankr. S.D.

N.Y. 2003) (court have "repeatedly recognized that section 105 may be used to enjoin litigation against non-debtors where there is the potential of the debtor being collaterally estopped from asserting defenses if an adverse judgment is entered against the non-debtors. It is sufficient for the Court to find … that there is a risk of imposition of collateral estoppel") (citing *In re United Health Care Org*., 210 B.R. 228, 232 (S.D. N.Y. 1997); *Ionosphere Clubs, Inc., supra* 111 B.R. at 435. Additionally, various parties may make statements or admissions in the State Court Actions that could be introduced against the Debtors in connection with these bankruptcy cases.

17. The Debtors having satisfied their burden for an injunction under § 105(a), respectfully asks the Court to stay the State Court Actions.

**C. The State Court Actions Should Also be Stayed Under Fed. R. Civ. Proc. 65**

18. While a party seeking a non-debtor injunction under § 105 does not have to satisfy the requirements for an injunction under Rule 65 of the Federal Rules of Civil Procedure, the Plaintiffs submit those requirements are also satisfied here.

19. A preliminary injunction is appropriate when a plaintiff demonstrates "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Markets, Inc. v. VCG Special Oppor. Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

I. The Debtors Will be Irreparably Harmed Absent the Injunction

20. When evaluating whether this factor is satisfied, bankruptcy courts look to the harm that will result to the estates if the injunction is not granted. In scenarios similar to the one here, bankruptcy courts have held found irreparable harm when an action would so consume time, energy and resources that "it would substantially hinder the debtor's reorganization efforts.

*Gilman v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 177 B.R. 475 481 n.6 (D. Del. 1993) (cited with approval by a panel of the 9th Cir. BAP in *Bank of the West v. Fabtech Industries, Inc. (In re Fabtech Industries, Inc.),* 2010 WL 6452908 (9th Cir. BAP 2010).

21. In these cases, as discussed above and in the Antell Affidavit, the Plaintiffs have established that the estates will be harmed if the State Court Actions are permitted to go forward against Dr. Antell.

II. Plaintiffs have Established Likelihood of Success on the Merits

22. In the chapter 11 context, the Debtors need not show that they will ultimately succeed on the instant adversary proceeding against the defendants; instead, the "success on the merits" factor is satisfied if the Debtors can show a reasonable likelihood of a successful reorganization. *See In re United Health Care Org.*, 210 B.R. 228, 234 (S.D.N.Y. 1997); *In re Lazarus Burman Assoc.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1095-96 (9th Cir. 2007) (noting that where the claim was that a claim against a third party would harm the debtor's ability to reorganize, "it makes sense to require a showing of a reasonable likelihood of a successful reorganization."). Indeed, "[a]t the beginning of the reorganization process, the court must work with less evidence than might be desirable ..." *In re Heatron, Inc.,* 6 B.R. 493, 496 (Bankr. Mo. 1980). These considerations require the court to resolve uncertainties about the debtor's future in favor of reorganization, if it is reasonably possible to do so. *See In re 6200 Ridge Assoc.,* 69 B.R. 837, 843 (Bankr. E.D.Pa. 1987); *Heatron, supra* 6 B.R. at 496.

23. "In the early stage of the case, 'the burden of proof ... is satisfied if the debtor can offer sufficient evidence to indicate that a successful reorganization within a reasonable time is 'plausible.'" *In re Sun Valley Newspapers, Inc.,* 171 B.R. 71 (B.A.P. 9th Cir. 1994) citing *In re*

*Holly's Inc.*, 140 B.R. 643, 700 (Bankr. W.D. Mich. 1992) (emphasis added); *see, e.g., In re Century Inv. Fund VIII Ltd. P'ship*, 155 B.R. 1002, 1007 (Bankr. E.D. Wis. 1989) (holding that to grant relief under §362(d)(2) on the basis that the subject property is not necessary for a debtor's reorganization, it must be established that the reorganization is impossible under any circumstance and that proof of impossibility must be compelling to make such a determination as a matter of law, without allowing a debtor to even attempt to propose a plan).

24. Here, the Debtors' bankruptcy cases were just filed and during that short timeframe, the Debtors and Dr. Antell have been working diligently. Indeed, the Debtors have retained a financial advisor to assist in the formulation of an appropriate and timely exit strategy. The Debtors expect to file a sale procedures motion shortly and secure DIP financing as well. Dr. Antell via Newco will act as the stalking horse buyer to allow for a successful reorganization. Therefore, the Debtors have clearly shown a reasonable likelihood of a successful reorganization, especially given the early stage of the cases, and this factor weighs in favor of issuing the requested preliminary injunction.

III. Balance of Harms Weights in Plaintiffs' Favor

25. There is no contest with respect to the balance of harms. Defendants will suffer little if any harm by waiting a few months to pursue its claims against Dr. Antell while the Debtors proceed with a sale of substantially all of its assets and exits from these cases. On the other hand, the likelihood of irreparable harm to the estates has been shown above. Therefore the balancing of harms factor strongly favors Plaintiffs.

IV. Public Policy

26. Here a consideration of public policy favors staying the State Court Actions. This is because of the strong public interest in promoting reorganization. *See e.g. Homestead*

*Holdings, Inc. v. Broome & Wellington (In re PTI Holding Corp.)*, 346 B.R. 820, 832 (Bankr. D. Nev. 2006) ("The public interest in successful reorganization is significant."). Therefore, to the extent that staying the State Court Actions will increase the likelihood that the Debtors will be able to successfully reorganize and consummate a sale as a going concern for the benefit of the creditor body, it is in the public's interest to extend the stay for a short time to give the Debtors every chance of succeeding.

**C. No Security is Required in These Cases**

27. Assuming the Court grants Debtors' request for a preliminary injunction, the Debtors submit that a security is not required. Federal Rule of Civil Procedure 65 (as incorporated by Federal Rule of Bankruptcy Procedure 7065) explicitly states that, "…a temporary restraining order or preliminary injunction may be issued on application of a debtor … or debtor in possession without compliance with Rule 65(c)." *See* Fed. R. Bankr. Proc. 7065.

**NOTICE**

28. The Debtors have provided notice of this motion to: (i) the Defendants named in the Adversary Proceeding; (ii) the Office of the United States Trustee; (iii) the entities listed on each Debtors' List of Creditors Holding the Twenty (20) Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (iv) the Secured Lender, Citibank, N.A. (Attn: Shawn Costello); (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) the United States Attorney for the Southern District of New York; and (viii) any parties required to be served under any applicable Bankruptcy Rule or Local Rule. The Debtors respectfully submit that such notice is sufficient and that no further notice need be given.

## CONCLUSION

**WHEREFORE,** based on the foregoing, the Debtors respectfully request the Court issue an order providing for a preliminary injunction staying the State Court Actions pursuant to section 105 of the Bankruptcy Code through the earlier of (1) the date the Debtors' plan is confirmed; (2) the date some other plan of reorganization is confirmed; (3) the date these cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code; or (4) further order of this Court.

Dated: New York, New York
January 15, 2014

ARENT FOX LLP

By: *____/s/ Robert M. Hirsh____*

Robert M. Hirsh
Mark B. Joachim
ARENT FOX LLP
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

*Proposed Attorneys for the Debtors and Debtors-in-Possession and the Plaintiffs herein*